**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

DEBBIE BARRAZA, KATHLEEN HEATH, CALLIE KANDEL, SAMANTHA TONEY, AND MONICA SMITH on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

EVENFLO COMPANY, INC.,

Defendant.

Civil Action No.: 1:25-cv-12914

**CONSOLIDATED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Debbie Barraza, Kathleen Heath, Callie Kandel, Samantha Toney, and Monica Smith ("Plaintiffs"), by and through undersigned counsel, and on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendant Evenflo Company, Inc., ("Defendant") and allege the following based upon personal knowledge and their own acts and experiences, and as to all other matters, upon information and belief, including investigation of counsel:

## NATURE OF THE ACTION

1. This class action lawsuit seeks relief for hundreds of thousands of consumers who purchased dangerously defective Evenflo car seats that contain an undisclosed choking hazard that Defendant failed to disclose at or prior to the point of sale.

2. Defendant designs, manufactures, markets, distributes, sells, and charges a premium price for the car seats at issue in this case: the Gold Revolve360 Slim and Revolve360

Slim ("Products" or "Car Seats").[1] But, unbeknownst to purchasers, the Products' headrest foam is improperly secured and can be easily accessed and dislodged by children, who can then place pieces of foam in their mouths, creating a serious choking and suffocation hazard ("Defect").

3. Examples of the Products, with highlighting of the defective headrest component, are shown below:


[2]


[3]


[4]

---

[1] The affected models include: 36812449, 36812449AZ, 36812450, 36812450POP, 36812450AZ, 36812451, 36812451AZ, 36812467, 36812467AZ, 36812468, 36812468AZ, 36812469, 36812469AZ, 36812470, 36812470A, 36812470TGT, 36812471, 36812501, 36812501A, 36812504.

[2] Evenflo GOLD Revolve 360 Slim 2-in-1 Rotational Car Seat with SensorSafe: https://www.target.com/p/evenflo-gold-revolve-360-slim-2-in-1-rotating-convertible-car-seat-amethyst-purple/-/A-94286918 (last accessed February 20, 2026).

[3] Gold Revolve360 Slim 2-in-1 Rotational Car Seat with SensorSafe (Obsidian Black): https://www.target.com/p/evenflo-gold-revolve-360-slim-2-in-1-rotational-convertible-car-seat/-/A-94601614 (last accessed February 20, 2026).

[4] Revolve360 Slim 2-in-1 Rotational Car Seat with Quick Clean Cover: https://www.evenflo.com/products/revolve360-slim-swivel-convertible-car-seat-quick-clean-cover-sale?srsltid=AfmBOooYiQR7G3JbdBDbNLyY4LSpv8ZdSM-CyU4OvqIntPpyurBLSR-K (last accessed February 20, 2026).

 [5]

 [6]

 [7]

 [8]

4. According to Defendant's own admission to the National Highway Traffic Safety Administration ("NHTSA"), "the headrest is accessible underneath the soft goods cover" and "the tape employed to protect against a child picking off pieces of foam does not extend sufficiently far to be fully effective."[9]

---

[5] Revolve360 Slim 2-in-1 Rotational Car Seat with Quick Clean Cover (Stow Blue): https://www.target.com/p/evenflo-revolve-360-slim-2-in-1-rotational-convertible-car-seat-with-quick-clean-cover-stow-blue/-/A-94286873 (last accessed February 20, 2026).

[6] Evenflo Revolve360 Slim 2-in-1 Rotational Car Seat with Quick Clean Cover (Sutton Purple): https://www.sears.com/evenflo-revolve360-slim-2in1-rotational-car-seat-with-quick-clean-cover-sutton-purple/p-A127146531?sid=ISxMP3xSOxGGxDTxSURF (last accessed February 20, 2026).

[7] Evenflo Revolve360 2-in-1 Rotational Car Seat: https://www.kohls.com/product/prd-7051844/evenflo-revolve360-2-in-1-rotational-car-seat.jsp (last accessed February 20, 2026).

[8] Evenflo Revolve360 Slim Rotational 2-in-1 Car Seat: https://www.shopmyexchange.com/evenflo-revolve360-slim-rotational-2in1-car-seat-4134596/4134596 (last accessed February 20, 2026).

[9] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-5471.pdf (last accessed March 4, 2026)



[10]

5. Defendant has known of this choking hazard since at least October 2, 2023, when a consumer reported a child picking at the foam of the product headrest and placing it in their mouth. Through the second quarter of 2025, Defendant received eleven reports of foam access and ingestion and twelve additional reports of children accessing the foam. Yet Defendant continued manufacturing and selling the dangerously defective Products, knowingly exposing hundreds of thousands of children to serious harm.

6. Not until almost two years after first learning of the Defect did Defendant initiate a voluntary recall on September 29, 2025 (NHTSA Campaign No. 25C010), which included approximately 324,997 units of the Products ("Recall").[11]

7. The Product model numbers included in the Recall are those at issue in this case: 36812449, 36812449AZ, 36812450, 36812450POP, 36812450AZ, 36812451, 36812451AZ,

---

[10] https://tc.canada.ca/en/road-transportation/defects-recalls-vehicles-tires-child-car-seats/evenflo-revolve360-slim-convertible-car-seats-headrest-foam-access (last accessed March 5, 2026).
[11] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-5471.pdf (last accessed March 4, 2026)

36812467, 36812467AZ, 36812468, 36812468AZ, 36812469, 36812469AZ, 36812470, 36812470A, 36812470TGT, 36812471, 36812501, 36812501A, 36812504.

8. Defendant's voluntary recall of the Products confirms more than three hundred thousand Car Seats manufactured between December 1, 2022, and December 8, 2024 contain the Defect ("Recall").[12]

9. However, the Recall is wholly inadequate. Defendant offers purchasers a free remedy kit with an additional tape seal, which is purportedly designed to protect against child access to the headrest foam.[13]



[12] *See* https://www.nhtsa.gov/recalls?nhtsaId=25C010000 (last accessed February 20, 2026).
[13] *See* https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-6050.pdf (last accessed February 20, 2026).



[14]

10. This tape seal provides no ***real*** relief and restoration of the benefit of the bargain, and instead leaves parents and caregivers with a Car Seat that remains dangerous and unsafe to use.

11. Defendants offer this meager "remedy" despite claiming in their marketing that "[s]afety has never meant more"[15] and that "[a]ll-in-one car seats… typically include more advanced safety and comfort features than convertible car seats."[16]

12. These misrepresentations, along with Defendant's pervasive omission of the Defect in advertising the Car Seats, allowed it to increase its profits and market share in the growing baby products market—where safety is a significant part of the consumer purchasing decision. Indeed, Defendant's brand under which it sells the Car Seats, "Evenflo," is a popular brand in the growing baby products market.[17]

---

[14] https://tc.canada.ca/en/road-transportation/defects-recalls-vehicles-tires-child-car-seats/evenflo-revolve360-slim-convertible-car-seats-headrest-foam-access (last accessed March 5, 2026).
[15] Display on evenflo.com. *See* https://www.evenflo.com/pages/car-seats (last accessed February 20, 2026).
[16] Display on evenflo.com. *See* https://www.evenflo.com/collections/convertible-car-seats (last accessed February 20, 2026).
[17] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-5471.pdf (last accessed February 20, 2026).

13. Plaintiffs and all reasonable consumers would not have purchased the Car Seats or would have paid less for them had they known that Defendant's safety representations and omissions were false and misleading.

14. Before the Products were made available for sale to consumers, Defendant, through industry standard product testing, was aware, or should have been aware, that the Car Seats' headrest cover could become unsecured. This could foreseeably allow a child to pull off pieces of foam and potentially choke on them. Defendant also received numerous reports of children choking as a result of the Defect, leading to the Recall.[18]

15. Yet Defendant misrepresented, omitted, and concealed this material fact to all reasonable consumers, including Plaintiffs and Class members, by failing to warn about the Defect anywhere on the Products' labeling.

16. Plaintiffs and Class members reasonably relied on these misrepresentations and material omissions when purchasing the Products. Plaintiffs and Class members paid a price premium based on these misrepresentations and omissions. Because Defendant's false and misleading misrepresentations and omissions duped reasonable consumers into believing the Products have basic expected safety features, Defendant's safety representations thereby duped reasonable consumers into paying inflated prices for the Products.

17. Defendant is thus liable to Plaintiffs and Class members for selling Products containing the undisclosed Defect. The remedy provided by the Recall fails to adequately compensate for this harm. This lawsuit seeks to recover this relief on behalf of Plaintiffs and the Class.

[18] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-5471.pdf (last accessed February 20, 2026)

## PARTIES

***Plaintiff Debbie Barraza***

18. Plaintiff Barraza is a resident and citizen of Corona, California. In or around January 2025, Plaintiff purchased the Evenflo Revolve360 Slim Canton car seat with model number 36812470 through Walmart.com. Plaintiff paid approximately $295.

19. Plaintiff Barraza's car seat is part of the Recall.

20. Plaintiff Barraza purchased the Product for her child to use.

21. Plaintiff Barraza, like all reasonable consumers, believed at the point of purchase that the Car Seat was safe to use as intended based on Defendant's safety misrepresentations.

22. When purchasing the Products, Plaintiff Barraza read and reviewed the accompanying labels and disclosures and understood them as representations by Defendant that the Products were adequately manufactured, labeled, free from defects, and that the misrepresentations concerning the safety of the product were true.

23. Plaintiff Barraza read and relied on Defendant's misrepresentations and material omissions when deciding to purchase the Products, and these misrepresentations and material omissions were part of the basis of the bargain. Had Defendant not made the false, misleading, and deceptive misrepresentations and material omissions alleged herein regarding the Products, Plaintiff Barraza would not have been willing to purchase the Products.

24. The remedy Defendant offered to Plaintiff Barraza through the Recall—providing tape to cover the exposed headrest—is entirely inadequate. The purported remedy offered by Defendant does not actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Defendant made regarding the Product. It fails to

make Plaintiff Barraza whole. The only remedy appropriate for Plaintiff Barraza and for Class members is a refund of the Product.

25. Plaintiff Barraza paid a price premium for the Product based on Defendant's misrepresentations and material omissions. Accordingly, Plaintiff Barraza was injured and lost money due to Defendant's mislabeling and deceptive conduct.

***Plaintiff Kathleen Heath***

26. Plaintiff Heath is a resident and citizen of Bloomfield, New York. On or around December 3, 2024. Plaintiff Heath purchased the Revolve360 Slim car seat with model number 36812467. Plaintiff Heath paid approximately $196.45 for the Revolve360 Slim car seat.

27. Plaintiff Heath also purchased the Revolve360 Slim Gold car seat on December 9, 2024, Plaintiff Heath purchased the Revolve360 Slim Gold car seat with model number 36812450, and paid approximately $243.05. Plaintiff Heath purchased both through Amazon.com, and both of Plaintiff Heath's Products are part of the Recall.

28. Plaintiff Heath purchased the Products for her child to use.

29. Plaintiff Heath, like all reasonable consumers, believed at the point of purchase that the Car Seat was safe to use as intended based on Defendant's safety misrepresentations.

30. When purchasing the Products, Plaintiff Heath read and reviewed the accompanying labels and disclosures and understood them as representations by Defendant that the Products were adequately manufactured, labeled, free from defects, and that the misrepresentations concerning the safety of the product were true.

31. Plaintiff Heath read and relied on Defendant's misrepresentations and material omissions when deciding to purchase the Products, and these misrepresentations and material omissions were part of the basis of the bargain. Had Defendant not made the false, misleading, and

deceptive misrepresentations and material omissions alleged herein regarding the Products, Plaintiff Heath would not have been willing to purchase the Products.

32. The remedy Defendant offered to Plaintiff Heath through the Recall—providing a tape to cover the exposed headrest—is entirely inadequate. The purported remedy offered by Defendant fails to address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Defendant made regarding the Product. It fails to make Plaintiff Heath whole. The only remedy appropriate for Plaintiff Heath and for Class members is a refund of the Product.

33. Plaintiff Heath paid a price premium for the Product based on Defendant's misrepresentations and material omissions. Accordingly, Plaintiff Heath was injured and lost money due to Defendant's mislabeling and deceptive conduct.

***Plaintiff Callie Kandel***

34. Plaintiff Kandel is a resident and citizen of Los Angeles, California. On April 3, 2025, Plaintiff purchased the Revolve360 Slim car seat with model number 36812469 through Amazon.com. Plaintiff paid approximately $269.00.

35. Plaintiff Kandel's car seat is part of the Recall.

36. Plaintiff Kandel purchased the Product for her child to use.

37. Plaintiff Kandel, like all reasonable consumers, believed at the point of purchase that the Car Seat was safe to use as intended based on Defendant's safety misrepresentations.

38. When purchasing the Products, Plaintiff Kandel read and reviewed the accompanying labels and disclosures and understood them as representations by Defendant that the Products were adequately manufactured, labeled, free from defects, and that the misrepresentations concerning the safety of the Products were true.

39. Plaintiff Kandel read and relied on Defendant's misrepresentations and material omissions when deciding to purchase the Products, and these misrepresentations and material omissions were part of the basis of the bargain. Had Defendant not made the false, misleading, and deceptive misrepresentations and material omissions alleged herein regarding the Products, Plaintiff Kandel would not have been willing to purchase the Products.

40. The remedy Defendant offered to Plaintiff Kandel through the Recall—providing tape to cover the exposed headrest—is entirely inadequate. The purported remedy offered by Defendant fails to actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Defendant made regarding the Product. It fails to make Plaintiff Kandel whole. The only remedy appropriate for Plaintiff Kandel and for Class members is a refund of the Product.

41. Plaintiff Kandel paid a price premium for the Product based on Defendant's misrepresentations and material omissions. Accordingly, Plaintiff Kandel was injured and lost money due to Defendant's mislabeling and deceptive conduct.

***Plaintiff Samantha Toney***

42. Plaintiff Toney is a resident and citizen of Woodbridge, Virginia. On March 24, 2025, Plaintiff Toney purchased the Revolve360 Slim car seat with model number 36812468 through the Defendant's website. The original purchase price was $200, but she received a $40 discount along with free shipping and was still responsible for taxes.

43. Plaintiff Toney's car seat is part of the Recall.

44. Plaintiff Toney purchased the Product for her child to use.

45. Plaintiff Toney, like all reasonable consumers, believed at the point of purchase that the Car Seat was safe to use as intended based on Defendant's safety misrepresentations.

46. When purchasing the Products, Plaintiff Toney read and reviewed the accompanying labels and disclosures and understood them as representations by Defendant that the Products were adequately manufactured, labeled, free from defects, and that the misrepresentations concerning the safety of the Products were true.

47. Plaintiff Toney read and relied on Defendant's misrepresentations and material omissions when deciding to purchase the Products, and these misrepresentations and material omissions were part of the basis of the bargain. Had Defendant not made the false, misleading, and deceptive misrepresentations and material omissions alleged herein regarding the Products, Plaintiff Toney would not have been willing to purchase the Products.

48. The remedy Defendant offered to Plaintiff Toney through the Recall—providing tape to cover the exposed headrest—is entirely inadequate. The purported remedy offered by Defendant fails to actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Defendant made regarding the Product. It fails to make Plaintiff Toney whole. The only remedy appropriate for Plaintiff Toney and for Class members is a refund of the Product.

49. Plaintiff Toney paid a price premium for the Product based on Defendant's misrepresentations and material omissions. Accordingly, Plaintiff Toney was injured and lost money due to Defendant's mislabeling and deceptive conduct.

***Plaintiff Monica Smith***

50. Plaintiff Smith is a resident and citizen of Hampshire, Illinois. On July 16, 2024, Plaintiff Smith purchased the Evenflo Revolve360 Slim Salem car seat with model number 36812467 through Amazon.com. Plaintiff Smith paid $264.59.

51. Plaintiff Smith's car seat is part of the Recall.

52. Plaintiff Smith purchased the Product for her child to use.

53. Plaintiff Smith, like all reasonable consumers, believed at the point of purchase that the Car Seat was safe to use as intended based on Defendant's safety misrepresentations.

54. When purchasing the Products, Plaintiff Smith read and reviewed the accompanying labels and disclosures and understood them as representations by Defendant that the Products were adequately manufactured, labeled, free from defects, and that the misrepresentations concerning the safety of the Products were true.

55. Plaintiff Smith read and relied on Defendant's misrepresentations and material omissions when deciding to purchase the Products, and these misrepresentations and material omissions were part of the basis of the bargain. Had Defendant not made the false, misleading, and deceptive misrepresentations and material omissions alleged herein regarding the Products, Plaintiff Smith would not have been willing to purchase the Products.

56. The remedy Defendant offered Plaintiff Smith through the Recall is inadequate. The purported remedy offered by Defendant fails to actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Defendant made regarding the Product. It fails to make Plaintiff Smith whole. The only remedy appropriate for Plaintiff Smith and for Class members is a refund of the Product.

57. Plaintiff Smith paid a price premium for the Product based on Defendant's misrepresentations and material omissions. Accordingly, Plaintiff Smith was injured and lost money due to Defendant's mislabeling and deceptive conduct.

***Defendant Evenflo Company, Inc.***

58. Defendant Evenflo is a corporation organized and existing under the laws of Massachusetts, having a principal place of business at 120 Royall St Suite 101, Canton, MA 02021. Defendant is a citizen of Massachusetts.

59. Evenflo is a large company that specializes in manufacturing and selling baby and juvenile products, including car seats.

60. Defendant claims to have "helped raise more than four generations of children on Evenflo products" and is "constantly pushing the boundaries in product design and safety innovation to meet parents right where they are—and where they want to go next."[19]

61. Defendant sells and markets the Products throughout the United States. The Products, including those purchased by Plaintiffs and Class members, are available at various retail stores throughout the United States. Defendant authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of the Products to consumers nationwide from its Massachusetts headquarters.

## JURISDICTION AND VENUE

62. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

[19] *See* https://www.evenflo.com/pages/about-evenflo (last accessed February 20, 2026).

63. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is within this state, and is therefore subject to general jurisdiction within the state. Additionally, the claims asserted in this complaint arise from Defendant's contacts with this District. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Massachusetts, and/or marketed, advertised, distributed and/or sold the Products, committed a statutory violation within Massachusetts related to the allegations made herein, and caused injuries to Plaintiffs and putative Class members, which arose out of the acts and omissions that occurred in the state of Massachusetts, during the relevant time period. At that time, Defendant was engaged in business activities in Massachusetts.

64. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in Massachusetts and because Defendant's principal place of business is in this District Court.

## COMMON FACTUAL ALLEGATIONS

***Defendant Markets Its Car Seats as "Safe" for Children.***

65. Defendant designs, manufactures, markets, and sells child safety products, including the Products at issue. Defendant's products are marketed as follows:

> For peace of mind all the way around, this slim fit car seat offers the extended security of rear-facing all the way up to 50 lb. Child safety experts say the longer your child remains rear-facing, the better. Convenience comes full circle with a rotating car seat you can install just once for rear-facing and forward-facing — no need to remove in order to make the switch. Sure360™ Safety Installation System with LockStrong™ and Tether360™, plus a handy bead-level indicator for leveling in seconds, make one-time installation safe, secure and simple.[20]

[20] *See* https://www.evenflo.com/products/revolve360-slim-rotational-car-seat-core (last accessed February 20, 2026).

66. Defendant's safety claims are critically important to Plaintiffs and reasonable consumers because millions of parents and caregivers know car seats, such as the Products at issue in this litigation, are essential to the safety of children while driving.

67. All models of the Products are substantially similar in form and function and, therefore, suffer from the same Defect, which prompted Evenflo's Recall (albeit inadequate) and this litigation.

***Defendant's Gold Revolve360 Slim and Revolve360 Slim Car Seats Endangered Children.***

68. The defective Car Seats contain foam padding in the headrest that can become unsecured, allowing children to pull off and mouth pieces of foam—posing a serious risk of choking or suffocation.

69. The detachable headrest was known to Defendant prior to the Recall at least as early as two years ago, based upon an October 2, 2023 report of a child picking at the foam of the Product headrest and placing it in their mouth.[21]

70. In fact, Evenflo has received 11 case reports of children with foam pieces from the headrest in their mouths and 12 case reports of children with foam pieces from the headrest, though not ingesting it..[22]

***Defendant Had a Duty to Disclose the Defect, but Concealed it from Plaintiffs and the Public.***

71. Defendant had an obligation, at all relevant times, to disclose that the Products contained a Defect in the headrest. This crucial information, which Defendant deliberately withheld from consumers, is material to their purchasing decisions and has far-reaching consequences for the health and well-being of infants and young children.

---

[21] *See* https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-6050.pdf (last accessed February 20, 2026).
[22] *See* https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25C010-6050.pdf (last accessed February 20, 2026).

72. Defendant knew that reasonable consumers would perceive the Products and the absence of the material omissions to mean that the Products were free from a defect which was a key factor in their purchasing decision.

73. Plaintiffs and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them if they had known that the Products posed the safety risk and, therefore, that the Products do not have the attribute claimed, promised, warranted, advertised, and/or represented.

***Defendant's Misrepresentations, Material Omissions, and Concealment of Material Facts are Deceptive and Unfair.***

74. To drive up sales in the competitive baby products market and expand its market share, Defendant knowingly omits the material fact that the Products contain a Defect in the car seat headrest, allowing a child to pull off pieces of the foam.

75. Thus, reasonable consumers who are shopping for safe products and purchased Defendant's Products were misled by the material omissions into believing the Products are safe.

76. Evenflo is a large, worldwide company that manufactures, distributes, and sells consumer products, including products for infants and young children, and it thus knew or should have known that the Products contained a Defect making them unsafe for children.

77. Defendant has engaged in deceptive, untrue, and misleading advertising by making misrepresentations and material omissions discussed above. Defendant's conduct is also deceptive because Defendant omits the material fact that the Products contain a Defect making them unsafe for children. Defendant's conduct is also unfair for all of the reasons discussed above.

78. Had Defendant adequately tested the Products and disclosed the Defect, Plaintiffs would not have purchased the Products or paid as much for them.

79. Defendant's concealment was material because consumers are concerned, particularly parents of young children, about the accessibility to hazardous material or to material that a child may choke on, and parents and caregivers, such as Plaintiffs and Class members, make purchasing decisions based on the misrepresentations and material omissions made on the Products' labeling.

80. The representation is also intentional, as Defendant knows that if it had not made the misrepresentations and material omissions, then Plaintiffs and Class Members would not have purchased the Products or would not have paid as much as they did.

***Defendant Possesses Vast Industry Knowledge That Plaintiffs and Reasonable Consumers Do Not Possess.***

81. As an industry leader in the baby products market, Defendant knew that the misrepresentations and material omissions were misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products.

82. Defendant knew that the misrepresentations and material omissions would lead reasonable consumers into believing that the Products would safe and free from choking hazards. Defendant has an obligation under Section 5 of the Federal Trade Commission Act, 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the misrepresentations and material omissions, in isolation or conjunction with its marketing strategy, would mislead reasonable consumers into believing that the Products are free from exposure to harmful choking hazard.

83. Defendant knew that its misrepresentations and material omissions would be material to consumers: manufacturers and marketers, like Defendant, know safety is paramount for consumers of baby and infant products. Here, Defendant's omissions relate directly to the Products' safety.

84. Additionally, Defendant's awareness of the importance of the Products' safety, specifically safety related to the harmful choking hazards of accessible pieces of foam, is reflected by its misrepresentations and material omissions on the Products' front labels and packaging, consistent throughout all Product packaging and labeling.

85. Even worse, as the manufacturer and marketer of the Products, Defendant had exclusive control over the misrepresentations and material omissions on the Products' labels, packaging, and advertisements. Defendant could have easily disclosed the risks or rectified consumers' misplaced beliefs by informing them about the accessibility to children of choking hazards like foam. However, Defendant chose to market the Products with misrepresentations, misleading consumers into overpaying for the Products.

86. Therefore, at all relevant times, Defendant knew that the misrepresentations and material omissions would mislead reasonable consumers, such as Plaintiffs, into purchasing the Products for the attributes that Defendants deceptively portrayed.

***Defendant Initiates an Inadequate Recall Due to the Defect.***

87. In September 2025, Defendant initiated a voluntary recall in cooperation with the NHTSA (Campaign No. 25C010), offering additional tape seal and installation instructions. However, the Recall fails to fully address the risks faced by consumers who unknowingly used defective Products.[23]

88. Defendant's subsequent Recall Notice is poorly designed, ineffective, and inadequate for providing consumers with a meaningful remedy for their purchase of the defective Products. Furthermore, implementing the Recall Notice as it currently stands constitutes an unfair and deceptive trade practice.

---

[23] *See* https://www.usatoday.com/story/cars/recalls/2025/09/30/evenflo-car-seat-recall/86437340007/ (last accessed on February 20, 2026).

89. Evenflo informed consumers that it will mail additional tape, seal, and installation instructions to impacted customers who register the Product. It is not, as of this writing, offering a full refund or a replacement with a comparable product.[24]

90. Defendant's offer of additional tape seal and installation instructions is inadequate; these modifications also significantly diminish the Products' value as "safe."

91. Moreover, the Recall process burdens consumers who are already living busy lives, caring for their children, and are not trained or experienced in designing child products, unlike Defendant. The Recall does not offer an expert to make the repairs and assumes that consumers know how to repair the Product.

92. Consumers are not offered a refund for the Products, and are told to "not attempt to return [their] car seat to a retailer."[25]

93. The Recall Notice is also inadequate for at least two reasons. First, Defendant failed to recall the entire Product and instead only advised its consumers to continue to use their Products safely as long as their child has not been able to reach or remove the foam in the headrest.[26] By failing to recall the entire Product, the Recall Notice allows and encourages consumers to continue to use a product with the risk of severe injury.

94. Second, the Recall Notice is wholly ineffective in providing consumers with a monetary remedy for purchasing the dangerously defective and misrepresented Products. Consumers paid an average retail price of $419.99 for the Products, but Defendant has not provided consumers with any monetary remedy.[27]

[24] *See* https://www.nhtsa.gov/recalls?nhtsaId=25C010000 (last accessed February 20, 2026).
[25] *See* *https://www.evenflo.com/pages/revolve360-slim-recall-u-s-canada?srsltid=AfmBOopQZblTVaUM8KaixPfmLlEaA6LO2V6DKIAIKJqc2Pntcix73Rkw* ((last accessed March 5, 2026).
[26] *See* https://www.evenflo.com/pages/revolve360-slim-recall-u-s-canada (last accessed February 20, 2026).
[27] *See* https://www.evenflo.com/collections/convertible-car-seats (last accessed February 20, 2026).

95. Every Product suffers from the uniform Defect, which, unknown to consumers but known to Defendant, exists at the point of purchase and poses an unreasonable safety hazard to children. As such, Plaintiffs and all reasonable consumers are victims of the unfair bargaining power between them and Defendant based on Defendant's superior industry knowledge.

***Economic Injuries to Plaintiffs and Class members – and the Public at Large***

96. When Plaintiffs purchased Defendant's Products, Plaintiffs did not know and had no reason to know that Defendant's Products contained a Defect in the car seat headrest.

97. Indeed, reasonable consumers cannot test or independently ascertain whether a product's covering of small pieces of harmful foam or foam that easily breaks off is sufficient at the point of sale. Therefore, they must trust and rely on Defendant to truthfully and honestly report what the Products contain on their packaging and labeling.

98. Further, given Defendant's position as a nationwide leader in the consumer products and baby products industry, Plaintiffs and all reasonable consumers trusted and relied on Defendant's misrepresentations and material omissions regarding the Products.

99. Yet, when consumers look at the Products' packaging, there is no mention of a choking hazard, a material fact which would influence consumers' purchasing decision.

100. Defendant's false, misleading, and deceptive misrepresentations and material omissions made on the labeling of the Products are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiffs and the Class members.

101. Defendant's advertising, labeling, and other public statements deliberately avoided any mention of the presence or risks of foam, despite scientific evidence and industry standards indicating that such risks were foreseeable and preventable.

102. Defendant's deceptive practices are particularly egregious given the vulnerability of the consumer base for these Products—parents, caregivers, and others seeking safe, reliable products for infants and children. Defendant exploited this vulnerability by misleading consumers into believing the Products were free of harmful substances.

103. The information described above, including the now-known health and safety risks to infants, has rendered the Products worthless to consumers. If parents of infants choose to discontinue use of the Products, they must pay for another product that can serve the activity Car Seats' intended purpose.

**FED. R. CIV. P. 9(b) ALLEGATIONS**
***(Affirmative and By Omission)***

104. Although Defendant is in the best position to know what content it placed on its marketing materials during the relevant timeframe, and the knowledge that it had regarding the Defect and its failure to disclose it, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

105. *Who*: Defendant made the misrepresentations and omissions regarding the safety of the Products in direct opposition to the Defect. Defendant made these misrepresentations and omissions on the Products' labeling, packaging, Defendant's website, and marketing materials, in written and electronic form.

106. *What*: Defendant's conduct here was, and continues to be, fraudulent because it misrepresented the Products while omitting and concealing the Defect. Defendant's conduct deceived Plaintiff and the Class into believing that the Products were safe and did not contain the Defect. Defendant knew, or should have known, that this information is material to reasonable consumers, including Plaintiffs and the Class, in making their purchasing decisions. However, up until Defendant was forced to issue the Recall, it omitted any warning that the Products contain

the Defect, and thus, is incapable of conforming to Defendant's representations about its safety and suitability. No reasonable consumer would expect that the Products possess the Defect.

107. *When*: Defendant made the misrepresentations and omissions as part of its marketing of the Products, detailed herein, during the class period and prior to and at the point of sale, leaving Plaintiffs and the Class unaware of the Defect prior to purchasing the Products.

108. *Where*: Defendant's misrepresentations and omissions were made on the Products' labeling, packaging, and marketing materials, on its website and through its social media, in written and electronic form.

109. *How*: Defendant disseminated its misrepresentations and omissions regarding the true nature of the Products, in written and electronic form on the Products' labeling, packaging, marketing materials, and company website.

110. *Why*: Defendant engaged in its misrepresentations and omissions for the express purpose of inducing Plaintiffs and the Class to purchase the Products, the effect of which was that Defendant profited by selling the Products to many thousands of consumers.

111. *Injury*: Plaintiffs and the Class purchased, or paid more for, the Products when they otherwise would not have absent Defendant's misrepresentations and omissions. Consumers continue to suffer economic harm because the Products are still in American vehicles and homes and possess the Defect.

**TOLLING AND ESTOPPEL**

112. Until the Recall, Plaintiffs and Class members had no way of knowing about Defendant's conduct with respect to the choking hazards associated with the use of the Recalled Products.

113. Neither Plaintiffs nor any other members of the Class, through the exercise of reasonable care, could have discovered the Defect prior to the Recall. Further, Plaintiffs and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein.

114. For these reasons, all applicable statutes of limitations have been tolled by the discovery rule with respect to claims asserted by Plaintiffs and the Class.

## CLASS ALLEGATIONS

115. Plaintiffs, individually and on behalf of all others, bring this class action pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4).

116. Plaintiffs seek to represent a class defined as:

> All persons who purchased Products in the United States for personal or household use during the fullest period provided by law ("Nationwide Class").

117. Plaintiffs also seek to represent a class defined as:

> All persons who purchased the Products in the states of Michigan, Minnesota, New Jersey, Missouri, California, Florida, Massachusetts, Washington, Illinois and New York[28] for personal or household use during the fullest period provided by law (Multi-State Consumer Protection Class).

118. Plaintiffs Barraza and Kandel also seek to represent a subclass defined as:

> All persons who purchased the Products in California for personal or household use during the fullest period provided by law ("California Subclass").

119. Plaintiff Heath also seeks to represent a subclass defined as:

> All persons who purchased the Products in the state of New York for personal or household use during the fullest period provided by law ("New

[28] Plaintiffs seek to certify a Multi-State Consumer Protection Class consisting of persons in the following states (and implicating the following statutes): California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); Florida (Fla. Stat. §§ 501.201, *et seq.*); Illinois (815 ICLS §§ 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Chapter 93A, *et seq.*); Michigan (Mich. Comp. Laws §§ 445.901, *et seq.*); Minnesota (Minn. Stat. §§ 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*); New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, *et seq.*); and Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*).

York Subclass").

120. Plaintiff Smith also seeks to represent a subclass defined as:

> All persons who purchased the Products in the state of Illinois for personal or household use during the fullest period provided by law (the "Illinois Subclass").

121. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and their current or former employees, officers, and directors; (3) individuals who allege personal bodily injury resulting from the use of the Products; and (4) resellers of the Products.

122. Plaintiffs reserve the right to modify, change, or expand the definitions of the Class based upon discovery and further investigation.

123. *Numerosity*: The Class is so numerous that the joinder of all members is impracticable. The Class likely contains thousands of members based on publicly available data. Approximately 324,000 Car Seats and subject to the Recall. The Class is ascertainable by records in Defendant's possession and in third-party retailers' possession.

124. *Commonality*: Questions of law or fact common to the Class include, without limitation:

a. Whether the Products contain a Defect;

b. Whether a reasonable consumer would consider the presence of harmful choking hazard in the Products (and omission thereof) to be material;

c. Whether Defendant knew or should have known that the Products contain a Defect;

d. Whether Defendant's misrepresentations and material omissions are deceptive;

e. Whether Defendant's misrepresentations and material omissions are false and misleading;

f. Whether Defendant failed to disclose that the Products contain a Defect;

g. Whether Defendant concealed that the Products contain a Defect;

h. Whether Defendant engaged in unfair or deceptive trade practices;

i. Whether Defendant violated the state consumer protection statutes alleged herein;

j. Whether Defendant breached implied warranties;

k. Whether Defendant was unjustly enriched; and

l. Whether Plaintiffs and Class members are entitled to monetary damages or other damages proscribed by the Court.

125. *Typicality*: Plaintiffs' claims are typical of the claims of Class members. Plaintiffs and Class members were injured and suffered damages in the same manner, have the same claims against Defendant relating to the same course of conduct, and are entitled to relief under the same legal theories.

126. *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in prosecuting complex class actions, including actions with issues, claims, and defenses similar to the present case. Counsel intends to prosecute this action vigorously.

127. *Predominance and superiority*: Questions of law or fact common to Class members predominate over any questions affecting individual members. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to

bring separate actions, this Court would be confronted with multiple lawsuits, burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiffs are unaware of any difficulties likely to be encountered in managing this action that would preclude its maintenance as a class action.

128. Accordingly, this class action may be maintained under Fed. R. Civ. P. 23(b)(2) and (b)(3).

## CAUSES OF ACTION

### COUNT I
### Breach of Implied Warranty of Merchantability
### (*On Behalf of Plaintiffs and the Nationwide Class*)

129. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

130. Defendant manufactured and distributed Products for sale to Plaintiffs and the Class.

131. As the developer, manufacturer, marketer, distributor, and seller of the defective Products, Defendant impliedly warranted that the Products were merchantable and fit for their intended use.

132. Defendant impliedly warranted to Plaintiffs and Class members that its Products were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

133. As alleged herein, Defendant breached the implied warranty of merchantability because the Products suffer from a safety defect. The Products are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

134. Due to the Defect, Plaintiffs and the members of the Class cannot use their Products as intended, substantially free from defects. The Products do not provide safe and reliable function as intended, represented, or described, and pose a serious risk of injury. As a result, Plaintiffs and the members of the Class cannot use their Products for the purposes for which they purchased them.

135. Plaintiffs did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiffs and Class members have been injured in an amount to be proven at trial.

**COUNT II**
**Violation of State Consumer Protection Statutes**
**(*On Behalf of Plaintiffs and the Multi-State Consumer Protection Class*)**

136. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

137. Plaintiffs and class members have been injured as a result of Defendant's violations of the state consumer protection statutes,[29] which also provide a basis for redress to Plaintiff and

[29] California (Cal. Bus. & Prof. Code §§ 17200, *et seq*.); Florida (Fla. Stat. §§ 501.201, *et seq*.); Illinois (815 ICLS §§ 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Chapter 93A, *et seq*.); Michigan (Mich. Comp. Laws §§ 445.901, *et seq*.); Minnesota (Minn. Stat. §§ 325F.67, *et seq*.); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq*.); New Jersey (N.J. Stat. §§ 56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §§ 349, *et seq*.); and Washington (Wash. Rev. Code §§ 19.86.010, *et seq*.).

class members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

138. As described herein, prior to and after distributing the Products into the consumer marketplace, Defendant knew that the Products were unsafe due to the Defect. Nonetheless, Defendant, aided by its misrepresentations and omissions, continued to sell the Products in the United States in order to increase its own profits, and garner market share, while putting infants and young children at risk.

139. Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

140. Defendant violated the Multi-State Consumer Protection Class states' unfair and deceptive acts and practices laws by misrepresenting, omitting, concealing, and failing to disclose material facts regarding the reliability, safety, and performance of the Products, as detailed herein.

141. Defendant's Recall also violated the state consumer protection statutes because it is a belated, inadequate, and ineffective Recall, which fails to provide reasonable consumers proper monetary relief considering the premium price they paid for the specific and vital quality of safety, and fails to adequately reach a sufficient number of consumers. Defendant's misrepresentations and omissions were material to Plaintiffs' and class members' decision to purchase the Products or pay a premium for them.

142. Defendant made its untrue and/or deceptive and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

143. As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiffs and class members paid a premium for the Products.

144. As a result of Defendant's violations, Defendant has been unjustly enriched.

145. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT III**
**Violations of the California Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq.* ("CLRA")**
**(*On behalf of California Plaintiffs and the California Subclass*)**

146. Plaintiffs Barraza and Kandel ("California Plaintiffs") incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

147. California Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and/or California Subclass members against Defendant.

148. California Plaintiffs and the California Subclass members are consumers who purchased the Products for personal, family, or household purposes. California Plaintiffs and the California Subclass are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

149. The Products that California Plaintiffs and California Subclass members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

150. Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted in, the sale of goods to consumers.

151. Defendant's marketing and labeling of the Products is false and misleading, and its omission of the Defect is false and misleading to reasonable consumers, including California

Plaintiffs. As discussed above, Defendant's representations concerning the safety and qualities of the Products are false and misleading due to the Defect. Further, because of the Defect, the Products cannot be used for their principal or intended purpose and are effectively worthless. The Products are unreasonably dangerous and are unfit for consumption or sale.

152. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair acts or practices, in that Defendant misrepresents the particular characteristics, uses, benefits, and quantities of the Products.

153. Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair acts or practices, in that Defendant misrepresents the particular standard, quality, or grade of the goods.

154. California Plaintiffs and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were accurate, true, and lawful.

155. California Plaintiffs and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Products absent Defendant's misrepresentations and omissions; (b) they would not have purchased the Products on the same terms absent

Defendant's representations and omissions; (c) they paid a price premium for the Products due to Defendant's misrepresentations and omissions; and (d) the Products did not have the characteristics, benefits, or quantities as promised.

156. California Plaintiffs and California Class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to California Plaintiffs and California Class members are inadequate because they are not equally prompt, certain, and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that California Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles California Plaintiffs to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not as certain as restitution claims because claims under the UCL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

157. Equitable relief is appropriate because California Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from the purchase of the Car Seat is determined to be an amount less than the premium price of the Car Seat. Without compensation for the full

premium price of the Product, California Plaintiffs would be left without the parity in purchasing power to which they are entitled.

158. On October 17, 2025, Plaintiff Barraza, through counsel, served a notice upon Defendants pursuant to California Civil Code § 1782(a) via certified mail notifying it of the alleged violations of the CLRA set forth herein and demanding that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. Plaintiff Kandel, through counsel, served a similar notice on Defendant on November 21, 2025. Having not received appropriate relief, California Plaintiffs seek monetary damages, injunctive relief, and equitable relief under the CLRA, pursuant to California Civil Code § 1782(d).

**COUNT IV**
**Violation of California's Unfair Competition Law,**
**California Business & Professions Code §§ 17200, *et seq.* ("UCL")**
**(*On Behalf of California Plaintiffs and the California Class*)**

159. Plaintiffs Barraza and Kandel ("California Plaintiffs") incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

160. California Plaintiffs bring this Count on behalf of themselves and the California Class.

161. Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful [or] unfair … business practices and unfair, deceptive, untrue or misleading advertising …."

162. Defendant's marketing and labeling of the Products is false and misleading, and their omission of the Defect is false and misleading to reasonable consumers, including California Plaintiffs. As discussed above, Defendant's representations concerning the safety and qualities of the Products are false and misleading due to the Defect. Further, because of the Defect, the

Products cannot be used for their principal or intended purpose, and are effectively worthless. The Products are unreasonably dangerous and are unfit for use or sale.

163. Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the CLRA, the FAL, and other applicable law as described herein.

164. Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers. Selling the Products in a manner that makes them inherently dangerous is of no benefit to consumers. Defendant's sale of the Products with the Defect causes a threat to public health, safety, and morality. Consumers are unwittingly purchasing and using the Products without knowing that they are ineffective and inherently dangerous, which in no way provides any benefit to consumers.

165. California Plaintiffs and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were not misleading, true, and lawful.

166. California Plaintiffs and the California Class lack an adequate remedy at law for the same reasons alleged above.

167. California Plaintiffs and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Products absent Defendant's misrepresentations and omissions; (b) they would not have purchased the Products on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for the Products due to Defendant's misrepresentations and omissions; and (d) the Products did not have the characteristics, benefits, or quantities as promised.

**COUNT V**
**Violation of California's False Advertising Law,**
**California Business & Professions Code §§ 17500, *et seq.* ("FAL")**
**(*On Behalf of California Plaintiffs and the California Class*)**

168. Plaintiffs Barraza and Kandel ("California Plaintiffs") incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

169. California Plaintiffs bring this Count on behalf of themselves and the California Class.

170. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

171. Defendant engaged in a scheme of offering mislabeled Products for sale to California Plaintiffs and the California Subclass members by way of product packaging, labeling, and other promotional materials. These materials misrepresented and/or omitted the true content and nature of the Products. Defendant's advertisements, labeling, and inducements come within the definition of advertising as contained in Bus. & Prof. Code § 17500, et seq. in that the product packaging, labeling, and promotional materials were intended as inducements to purchase the Products, and are statements disseminated by Defendant to California Plaintiffs and Subclass members. Defendant knew, or reasonably should have known, that these statements were unauthorized, inaccurate, and misleading.

172. Defendant's marketing and labeling of the Products is false and misleading, and their omission of the Defect is false and misleading to reasonable consumers, including California Plaintiffs. As discussed above, Defendant's representations concerning the safety and qualities of the Products are false and misleading due to the Defect. Further, because of the Defect, the Products cannot be used for their principal or intended purpose, and are effectively worthless. The Products are unreasonably dangerous and are unfit for consumption or sale.

173. Defendant knew or should have known, through the exercise of reasonable care, that its representations and omissions were false and misleading and that the Defect caused the Products to be unreasonably dangerous and unfit for use or sale.

174. California Plaintiffs lack an adequate remedy at law for the same reasons alleged above.

175. California Plaintiffs and the California Subclass suffered injuries caused by Defendant because (a) they would not have purchased the Products absent Defendant's misrepresentations and omissions; (b) they would not have purchased the Products on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for the Products due to Defendant's misrepresentations and omissions; and (d) the Products did not have the characteristics, benefits, or quantities as promised.

**COUNT VI**
**Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act,**
**California Civil Code §§ 1792 and 1791.1, *et seq.***
**(*On Behalf of California Plaintiffs and the California Subclass*)**

176. Plaintiffs Barraza and Kandel ("California Plaintiffs") incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

177. This Count is brought on behalf of California Plaintiffs and the California Subclass.

178. California Plaintiffs' Product is a "consumer good" within the meaning of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1795.1.

179. Defendant was at all relevant times the manufacturers, distributors, warrantors, and/or sellers of the Products. Defendant knew or had reason to know of the specific use for which the Products were purchased.

180. Defendant provided California Plaintiffs and the California Subclass members with an implied warranty that the Products were merchantable and fit for the ordinary and particular purposes for which they were sold.

181. Defendant breached the implied warranty of merchantability because the Products, which were marketed as safe and suitable for children, to be merchantable, must provide a suitable and safe sitting area for children in a car, and, for the reasons stated above, the Products are not safe and, in fact, are dangerous. These Products, when sold and at all times thereafter, were not fit for the particular purpose for which consumers purchased them.

182. The Products are unsafe and dangerous because they are of such a character that when used in their expected manner they are a source of potential death and injury to children.

183. California Plaintiffs and members of the Subclass are among those intended to be ultimate consumers of the Products.

184. At all times that Defendant warranted and sold the Products, it knew, or had reason to know, that California Plaintiffs and the California Subclass members were purchasing the Products for the particular purpose of using the Products for use as a safe car seat.

185. Defendant also knew or should have known that its warranties were false, and yet it did not disclose the truth, or stop manufacturing or selling the Products, and instead continued to issue false warranties, and continued to insist the product is safe.

186. These Products, when sold and at all times thereafter, were not fit for the particular purpose for which consumers purchased them.

187. On November 21, 2025, Plaintiff Kandel sent Defendant a letter informing them of her statutory consumer protection and warranty claims under California law.

188. It is not required, and would be futile, for California Plaintiffs to provide Defendant further opportunity to cure its breach. Defendant have also been provided notice of its breaches of warranty through numerous consumer complaints.

189. The Products were defective when Defendant delivered them to its resellers, dealers, and distributors which sold the Products, and the Products were therefore still defective when they reached California Plaintiffs and the California Subclass. The Defect is inherent and was present in each Products at the time of sale, and the Products remain defective after the Recall.

190. Defendant's resellers, dealers, and distributors are intermediaries between Defendant and consumers. These intermediaries sell the Products to consumers and are not, themselves, consumers of the Products, and therefore have no rights against Defendant.

191. Defendant's warranties were designed to influence consumers who purchased and/or owned the Products.

192. California Plaintiffs and each Subclass member's acquisition of the Products suffices to create privity of contract between California Plaintiffs and all other members of the Subclass, on the one hand, and Defendant, on the other hand; however, privity of contract need not be established nor is it required because California Plaintiffs and the Subclass members are intended third-party beneficiaries of contracts between Defendant and its resellers, authorized dealers, and, specifically, of Defendant's implied warranties.

193. As a result of Defendant's breach of the applicable implied warranties, purchasers of the Products suffered an ascertainable loss of money, property, and/or value of their Products.

194. As a direct and proximate result of Defendant's breach of implied warranty of merchantability, California Plaintiffs and the Subclass are entitled to damages in an amount to be determined at trial.

195. California Plaintiffs also seek injunctive relief, including a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the Products and the implementation of a corrective advertising campaign by Defendant.

196. Additionally, California Plaintiffs and the Subclass seek attorneys' fees and costs pursuant to Cal. Civ. Code § 1794.

**COUNT VII**
**Unjust Enrichment**
**(*On behalf of Plaintiffs and the Nationwide Class*)**

197. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

198. Plaintiffs bring this Count on behalf of themselves and the Nationwide Class against Defendant.

199. Defendant's conduct violated, inter alia, state, and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Products while misrepresenting and omitting material facts.

200. Defendant's unlawful conduct allowed Defendant to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of, Plaintiffs and Class members and to Defendant's benefit and enrichment. Defendant has violated fundamental principles of justice, equity, and good conscience.

201. Plaintiffs and Class members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

202. Defendant knowingly received and enjoyed the benefits conferred by Plaintiffs and Class members.

203. It is inequitable for Defendant to retain the benefits conferred by Plaintiffs and Class members' overpayments.

204. Plaintiffs and Class members seek to establish a constructive trust from which Plaintiffs and Class members may seek restitution.

**COUNT VIII**
**Fraudulent Concealment**
**(*On behalf of Plaintiffs and the Nationwide Class*)**

205. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

206. Plaintiffs bring this claim against Defendant on behalf of themselves and the other members of the Nationwide Class (the "Class").

207. Defendant had a duty to disclose material facts to Plaintiffs and Class members, given their relationship as contracting parties and intended users of the Products.

208. Defendant had superior knowledge about the defective nature of the product at issue, particularly the risk of the foam headrest detaching from the car seat and choking children, which made them unfit for ordinary use.

209. During this time, Plaintiffs and Class members used the Products without being aware of these choking risks, reasonably believing that the Products were safe for use.

210. Defendant knew or should have known about the Defect but failed to warn consumers, retailers, or regulators, and continued to sell the Product despite the Defect, and either knew or should have known about the risk, particularly if the recall had already been issued.

211. Defendant failed to disclose these material facts with the intent to induce consumers into purchasing the Products, despite the latent Defect. This failure constitutes fraudulent concealment as Defendant intentionally withheld critical safety information that, if disclosed, would have affected consumers' purchasing decisions.

212. Plaintiffs and Class members reasonably relied on Defendant's failure to disclose, believing that the Products were safe when, in fact, they were not.

213. Had Plaintiffs and Class members known the true risks, they would not have purchased the Products or would have paid significantly less.

214. As a direct and proximate result of Defendant's fraudulent concealment, Plaintiffs and Class members suffered financial losses, including the cost of purchasing defective Products, the risk of harm, and the devaluation of their purchases.

215. Because Defendant acted with willful and malicious intent, punitive damages are warranted to deter future misconduct and punish Defendant for knowingly concealing critical safety information from consumers.

**COUNT IX**
**Violation of New York Deceptive Acts and Practices Law**
**NY CLS Gen Bus §§ 349**
**(*On behalf of Plaintiff Heath and the New York Subclass*)**

216. Plaintiff Heath and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

217. By the acts and conduct alleged herein, Defendant committed deceptive acts and practices in the State of New York by making the above alleged misrepresentations directed to consumers in New York.

218. Plaintiff Heath and other members of the New York Subclass are "consumers" in accordance with New York General Business Law, NY CLS Gen Bus § 349.

219. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation: (1) failing to warn or disclose to purchasers of the Products were not safe for children; (2) advertising that Products was safe for use for children; and (3) failing to warn in the product page or manual about the material risk that children can dislodge the headrest foam, creating a choking hazard.

220. Defendant concealed and omitted material facts regarding the true nature of the Products.

221. A reasonable consumer would have considered that information important in deciding whether to purchase the Products.

222. The foregoing deceptive acts and practices were directed at consumers.

223. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

224. Defendant possessed information about the Products, including, but not limited to the fact that the Products were not safe for children, which was relevant to Plaintiff Heath and New York Subclass members, but failed to disclose this information.

225. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

226. Defendant's statements concerning the safety of the Products, alleged above, were misleading in violation of NY CLS Gen Bus § 349. At all relevant times, Defendant conducted trade and commerce in New York and elsewhere within the meaning of § 349 and profited from the sale of the Products within New York.

227. On behalf of herself and other members of the New York Subclass, Plaintiff Heath brings this action to enjoin Defendant's unlawful and deceptive acts or practices and seeks to recover their actual damages or fifty dollars, whichever is greater, per violation, three times actual damages, and reasonable attorneys' fees.

228. As a direct and proximate result of Defendant's conduct, Plaintiff Heath and other members of the New York Subclass have suffered damages.

229. Accordingly, Plaintiff Heath and the New York Subclass seek to enjoin the unlawful acts and practices described herein, to recover actual damages or statutory damages of fifty dollars under NY CLS Gen Bus §§ 349 , respectively, whichever is greater, as well as punitive damages and reasonable attorneys' fees and costs. On behalf of Plaintiff Heath and the New York Subclass, Plaintiffs also seek an order entitling them and the New York Subclass to recover all monies which were acquired through Defendant's acts of fraudulent, unfair, or unlawful competition.

**COUNT X**
**Violation of New York Deceptive Acts and Practices Law**
**NY CLS Gen Bus § 350**
**(*On behalf of Plaintiff Heath and the New York Subclass*)**

230. Plaintiff Heath and the New York Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

231. By the acts and conduct alleged herein, Defendant committed deceptive acts and practices in the State of New York by making the above alleged misrepresentations directed to consumers in New York.

232. Plaintiff Heath and other members of the New York Subclass are "consumers" in accordance with NY CLS Gen Bus § 350.

233. New York's General Business Law, NY CLS Gen Bus § 350, prohibits false advertising in the conduct of any business, trade, or commerce.

234. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

235. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

236. Defendant's false, misleading, and deceptive representations and omissions of fact about the Products were and are directed towards consumers.

237. Defendant's false, misleading, and deceptive representations and omissions were material and are likely to mislead a reasonable consumer acting reasonably under the customary or usual circumstances.

238. Defendant's false, misleading, and deceptive representations and omissions have resulted in consumer injury or harm to the public interest.

239. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiff Heath and the New York Subclass have suffered and continue to suffer economic injury.

240. As a result of Defendant's violations, Plaintiff Heath and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Products on the same terms, if at all, if they knew that the Products was not adequately protecting minors; and (b) the Products does not have the characteristics, uses, benefits, or qualities as promised.

241. On behalf of herself and other members of the New York Subclass, Plaintiff Heath seeks to recover actual damages or five hundred dollars, whichever is greater for each violation, three times actual damages, and reasonable attorneys' fees.

**COUNT XI**
**Negligent Design**
**(*On behalf of the Plaintiffs and the Class*)**

242. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

243. Defendant had a duty to exercise reasonable care in the design of the Products to avoid unreasonable, foreseeable risks of harm where safer, feasible alternatives existed.

244. The Car Seats' headrests are designed in a way that allows children to easily reach and remove the foam during normal use. This creates a foreseeable risk, as children can place the foam in their mouths or noses, posing a choking hazard. Even under ordinary use, the design exposes children to a danger that could have been reasonably prevented.

245. Feasible, safer alternative designs were available at reasonable cost, at all relevant times, including, but not limited to, (a) adding a secured barrier to prevent children from dislodging the headrest foam; (b) non- removable headrest foam that avoids dislodging; (c) use of materials which are sturdy and durable; and (d) clear warning labels on the Product.

246. Defendant breached its duty by adopting and selling the above layout without proper safeguards.

247. This defective design was a substantial factor in causing foam from dislodging as alleged by Plaintiffs and the putative Class members.

248. Defendant had actual and constructive knowledge of the Defect well before the recall announcement, including consumer complaints, internal testing, and incident data accumulated over years. Defendant continued marketing and selling the Products without adequate warning or redesign.

249. Plaintiffs and the Class suffered damages and related losses, proximately caused by Defendant's negligent design.

**COUNT XII**
**Breach of Express Warranty**
**(*On Behalf of Plaintiffs and the Nationwide Class*)**

250. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

251. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against Defendant.

252. Defendant is and was at all relevant times a "merchant" with respect to the Products under applicable state Uniform Commercial Code provisions, and a "seller" of the Products.

253. Plaintiffs and all Nationwide Class members who purchased the Products are "buyers" within the meaning of applicable state Uniform Commercial Code provisions.

254. The Products are and were at all relevant times "goods" within the meaning of applicable state Uniform Commercial Code provisions.

255. In connection with the purchase of all Products, Defendant provided Plaintiffs and Class members with written and oral express warranties that the Products were safe, met or exceeded federal safety standards, and were free of defects.

256. Through their marketing, advertising, packaging, labeling, and promotional materials described herein, Defendants expressly warranted and represented that the Products were safe and suitable for use by infants and young children during vehicle travel.

257. Specifically, Defendants made the following express warranties and representations to Plaintiffs and Class members:

a. "Family First, Always"—representing that family safety is the company's highest priority;

b. "Safety Innovation" and "Thoughtful Design"—representing that the products incorporate advanced safety features and careful engineering;

c. "Evenflo is committed to providing child safety through research, testing, design, and community"—representing that the Products are thoroughly researched, tested, and designed for child safety;

d. Going "above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard"—representing that the Products exceed safety requirements;

e. "Sure360 Safety Installation System" with "LockStrong" and "Tether360 technology" to keep the seat "safe and secure"—representing that the Products incorporate safety systems;

f. "360-degree rotating base for easy in and out access" with emphasis on safety and convenience—representing that the Products are both safe and user-friendly;

g. "Safety has never meant more"—representing paramount commitment to safety; and

h. "Peace of mind all the way around"—representing that the Products provide safety assurance.

258. Representations that the Products meet all applicable federal safety standards and are suitable for their intended purpose.

259. These express warranties were affirmations of fact and promises relating to the goods that became part of the basis of the bargain between Defendant and Plaintiffs and Class members.

260. Defendant's express warranties formed the basis of the bargain that was reached when Plaintiffs and Class members purchased the Products.

261. Plaintiffs and Class members read and relied upon Defendant's express warranties when deciding to purchase the Products, and these warranties were part of the basis of the bargain.

262. Defendant breached its express warranties because the Products are not safe or suitable for use by infants and young children as represented. The Products contain the choking hazard Defect, which directly contradicts Defendant's express representations about safety.

263. Specifically, the headrest foam in the Products is improperly secured and can be accessed and dislodged by children during normal use, creating a serious choking and suffocation hazard. This Defect renders the products unsafe and unsuitable for their intended purpose, contrary to Defendant's express warranties.

264. The Products do not conform to the express warranties because they fail to provide the safety and reliability that Defendant expressly promised, they contain a dangerous Defect that poses serious risk to children, and they do not meet the safety standards that Defendant represented.

265. Defendant knew or should have known that their express warranties were false at the time they made them, particularly after receiving consumer reports of the choking hazard Defect starting in at least October 2023, yet continued to make these representations.

266. Defendant was on notice of the breach of express warranty through numerous consumer complaints, through the Recall announcement, and through notice provided by Plaintiffs' counsel. Moreover, on November 21, 2025, Plaintiff Kandel, through counsel, served a notice upon Defendant via certified mail notifying them of the alleged violations set forth herein and demanding that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act.

267. As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and Class members have been injured and suffered damages in an amount to be proven at trial, including but not limited to the purchase price paid for the defective Products, out-of-pocket costs, and diminished value.

**COUNT XIII**
**Negligence**
**(*On Behalf of Plaintiffs and the Nationwide Class*)**

268. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

269. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against Defendant.

270. Defendant had a duty to exercise reasonable care in the design of the Products to avoid unreasonable, foreseeable risks of harm where safer, feasible alternatives existed.

271. The Car Seats' headrests are designed in a way that allows children to easily reach and remove the foam during normal use. This creates a foreseeable risk, as children can place the

foam in their mouths or noses, posing a choking hazard. Even under ordinary use, the design exposes children to a danger that could have been reasonably prevented.

272. Feasible, safer alternative designs were available at reasonable cost, at all relevant times, including, but not limited to: (a) properly securing the headrest foam with adequate adhesive or mechanical fasteners to prevent child access; (b) fully enclosing the foam within non-removable protective materials; (c) using alternative headrest materials that do not present a choking hazard; (d) designing the headrest so that foam components are completely inaccessible to children; and (e) including clear warning labels on the Products regarding the choking hazard.

273. Other car seat manufacturers produce safe car seats with properly secured headrest components, demonstrating that the risk inherent in Defendant's Products is demonstrably avoidable through proper design.

274. Defendant breached its duty by adopting and selling the above design without proper safeguards.

275. This defective design was a substantial factor in causing foam dislodging as alleged by Plaintiffs and the putative Class members.

276. Defendant had actual and constructive knowledge of the Defect well before the Recall announcement, including consumer complaints, internal testing, and incident data accumulated over years. Defendant continued marketing and selling the Products without adequate warning or redesign.

277. Plaintiffs and the Class suffered damages and related losses, proximately caused by Defendant's negligent design.

**COUNT XIV**
**Violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act 815 ILCS 505/1, *et seq.* ("ICFA")**
***(On Behalf of Plaintiff Smith and the Illinois Subclass)***

278. Plaintiff Smith incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

279. Plaintiff Smith brings this Count on behalf of herself and the Illinois Subclass.

280. Plaintiff Smith and Illinois Subclass members are "persons" and "consumers" under 815 ILCS 505/1(c), (e).

281. Defendant is a "person" engaged in "trade or commerce" within the meaning of 815 ILCS 505/1(c), (f).

282. The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." *See,* ICFA, 815 ILCS 505/2.

283. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act. *See* 815 ILCS 505/2.

284. Plaintiff Smith and the other Illinois Subclass members reasonably relied upon Defendant's representation that the Products were safe for personal use and did not present a safety hazard to consumers.

285. Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in trade and commerce, violating 815 ICFA 505/1, *et seq.*

286. Defendant violated the ICFA by representing that the Car Seats have characteristics or benefits that they do not have. *See* 815 ILCS 505/2; 815 ILCS 510/2(7).

287. Defendant did not intend to sell the products as advertised, in violation of 815 ILCS 505/2 and 815 ILCS 510/2(9).

288. Defendant engaged in fraudulent and/or deceptive conduct that creates a likelihood of confusion or misunderstanding in violation of 815 ILCS 505/2; 815 ILCS § 510/2(3).

289. Defendant's deceptive and unfair conduct occurred primarily and substantially in Illinois because:

(a) Evenflo marketed, promoted, and sold the Products to Illinois consumers;

(b) Plaintiff Smith purchased and used the Products in Illinois;

(c) the economic injury was suffered in Illinois; and

(d) the same misrepresentations and omissions were disseminated uniformly to Illinois consumers.

290. Defendant's conduct violates the fundamental Illinois public policy of preventing concealed safety hazards in consumer products.

291. Defendant violated the ICFA by representing that the Products were safe, suitable for household use and free of material defects, while concealing the known safety hazard.

292. Defendant's omissions were material because the Defect presented a life-threatening safety risk to children and rendered the Car Seats unfit for their ordinary purpose. No reasonable consumer would purchase a Car Seat containing the defective headrest cover which exposes foam dangerous to children.

293. Defendant's conduct, including manufacturing, marketing and selling the defective Products, and the delayed, ineffective and inadequate Recall, constitutes deceptive and unfair

business practices under 815 ILCS 505/2 and under the incorporated provisions of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

294. As a direct and proximate result of Defendant's unfair and deceptive acts and omissions, Plaintiff Smith and Illinois Subclass members suffered ascertainable economic losses, including:

(a) overpayment for unsafe and unmerchantable Car Seats;

(b) loss of the benefit of their bargain; and

(c) diminished or zero product value due to the Defect and inadequate recall remedy.

295. Had Plaintiff Smith and Illinois Subclass members known the Products contained a concealed safety hazard, they would not have purchased them or would have paid materially less.

296. Under 815 ILCS 505/10a, Plaintiff Smith and the Illinois Subclass seek all available remedies, including actual damages, statutory damages, punitive damages, injunctive relief, restitution, attorney's fees and costs.

**COUNT XV**
**Violations of the Illinois Deceptive Trade Practices Act**
**815 ILCS 510/1, *et seq.***
**(*On Behalf of Plaintiff Smith and the Illinois Subclass*)**

297. Plaintiff Smith incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

298. Plaintiff Smith brings this Count on behalf of herself and the Illinois Subclass.

299. The Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*. ("UDTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. 815 ILCS 510/2(a).

300. In the course of its business, Defendant, through themselves, their agents, employees, and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally misrepresenting, omitting, concealing and failing to disclose material facts regarding the reliability, safety, and performance of the Products, as detailed herein.

301. Specifically, by misrepresenting the Products as safe and suitable for their marketed and intended use, and by failing to disclose and actively concealing the dangers and risk posed by the Defect, Defendant engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

(a) Representing that the Products have characteristics, uses, benefits, and qualities which they do not have;

(b) Representing that the Products are of a particular standard, quality, and grade when they are not;

(c) Advertising the Products with the intent not to sell them as advertised; and

(d) Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding. 815 ILCS 510/2(a)(5), (7), (9) and (12).

302. Defendant's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Smith and Illinois Subclass members, about the true safety and reliability of the Car Seats, the quality of the Car Seats and the true value of the Car Seats.

303. Defendant's scheme and concealment of the true characteristics of the Products were material to Plaintiff Smith and Illinois Subclass members.

304. Had they known the truth, Plaintiff Smith and Illinois Subclass members would not have purchased Products or would have paid significantly less for them.

305. Plaintiff Smith and Illinois Subclass members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant concealed or failed to disclose.

306. Plaintiff Smith and Illinois Subclass members did not, and could not, unravel Defendant's deception on their own.

307. Defendant had an ongoing duty to Plaintiff Smith and Illinois Subclass members to refrain from unfair or deceptive practices under the Illinois UDTPA in the course of its business.

308. Specifically, Defendant owed Plaintiff Smith and Illinois Subclass members a duty to disclose all the material facts concerning the Products because Defendant possessed exclusive knowledge, intentionally concealed the true characteristics of the Products from Plaintiff Smith and Illinois Subclass members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

309. Plaintiff Smith and Illinois Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

310. Defendant's violations present a continuing risk to Plaintiff Smith and Illinois Subclass members, as well as to the general public.

311. Defendant's unlawful acts and practices complained of herein affect the public interest.

312. Pursuant to 815 ILCS 510/3, Plaintiff Smith and Illinois Subclass members seek an order enjoining Defendant's unfair or deceptive acts or practices and any other just and proper relief available under the Illinois UDTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendant as follows:

a. Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

b. Enter an order declaring that Defendant are financially responsible for notifying the Class members of the pendency of this suit;

c. Awarding Plaintiffs and Class members compensatory, statutory, or other monetary damages, in an amount to be determined at trial;

d. Awarding Plaintiffs and Class members appropriate relief, including but not limited to actual damages;

e. For restitution and disgorgement of profits;

f. Awarding Plaintiffs and Class members reasonable attorneys' fees and costs as allowable by law;

g. Awarding pre-judgment and post-judgment interest;

h. For punitive damages; and

i. Granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: March 6, 2026

Respectfully Submitted,

By: /s/ *Kevin Laukaitis*

**LAUKAITIS LAW LLC**
Kevin Laukaitis (*pro hac vice*)
Daniel Tomascik (*pro hac vice*)
Natalia Perez (*pro hac vice* forthcoming)
954 Avenida Ponce DeLeon
Suite 205 - #10518
San Juan, PR 00907
(215) 789-4462
klaukaitis@laukaitislaw.com
dtomascik@laukaitislaw.com
nperez@laukaitislaw.com

**POULIN | WILLEY | ANASTOPOULO, LLC**
Paul J. Doolittle, Esq. (*Pro Hac Vice* Forthcoming)
32 Ann Street
Charleston, SC 29403
(803) 222-2222
pauldoolittle@poulinwilley.com
cmad@poulinwilley.com

**LEVI & KORSINSKY, LLP**
Gary Ishimoto
Mark S. Reich (*pro hac vice* forthcoming)
Michael N. Pollack (*pro hac vice* forthcoming)
33 Whitehall Street
27th Floor
New York, NY 10004
(212) 363-7500
gishimoto@zlk.com
mreich@zlk.com
mpollack@zlk.com

*Interim Co-Lead Class Counsel*

**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**
Zachary Arbitman (admitted *pro hac vice*)
Nicole Maruzzi
George Donnelly(admitted *pro hac vice* )
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
(215) 567-8300
zarbitman@feldmanshepherd.com
gdonnelly@feldmanshepherd.com
nmaruzzi@feldmanshepherd.com

*Plaintiffs' Executive Committee*

**THE BAKER LAW GROUP**
Andrew S. Baker
89 E Nationwide Blvd.
2nd Floor
Columbus, OH 43215
(614) 228-1882
andrew.baker@bakerlawgroup.ne

**SIRI | GLIMSTAD**
Christina Xenides
Mason A. Barney (*pro hac vice* forthcoming)
Leslie Pescia (*pro hac vice* forthcoming)
745 Fifth Avenue, Suite 500
New York, NY 10151
(212) 532-1091
cxenides@sirillp.com
mbarney@sirillp.com
lpescia@sirillp.com

*Attorney for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I, Kevin Laukaitis, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Counsel for Defendant Evenflo Company, Inc. has registered on CM/ECF and paper copies are not required.

Date: March 6, 2026

*/s/ Kevin Laukaitis*
Kevin Laukaitis